# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Leda Dunn Wettre |
| v. | : | Mag. No. 21-13385 |
| KENNETH A. WELSH | : | CRIMINAL COMPLAINT |
| | : | **FILED UNDER SEAL** |

I, Anna Szawara, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Anna Szawara, Special Agent
Federal Bureau of Investigation

Special Agent Szawara attested to the facts of this application telephonically pursuant to F.R.C.P. 4.1(b)(2)(A) on October 27, 2021.

_LEDA DUNN WETTRE/as_
Honorable Leda Dunn Wettre
United States Magistrate Judge

**ATTACHMENT A**

**Counts One through Four**

**(Wire Fraud)**

From in or around April 2018 through in or around December 2018, in the District of New Jersey and elsewhere, defendant

**KENNETH A. WELSH**

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud victim investors, including Victim 1, Victim 2, Victim 3, Victim 4, and Victim 5, and to obtain money and property from victim investors by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing this scheme and artifice to defraud, did knowingly and intentionally transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, specifically those referenced below, each constituting a separate count of this Complaint.

| Count | Approximate Date | Wire |
|---|---|---|
| 1 | April 2, 2018 | Causing the transmission of approximately $32,707 fraudulently obtained from Victim 1, by an interstate wire that traveled through New Jersey. |
| 2 | June 4, 2018 | Causing the transmission of approximately $45,202 fraudulently obtained from Victim 2, by an interstate wire that traveled through New Jersey. |
| 3 | July 2, 2018 | Causing the transmission of approximately $45,655 fraudulently obtained from Victim 3 and Victim 4, by an interstate wire that traveled through New Jersey. |
| 4 | December 13, 2018 | Causing the transmission of approximately $61,744 fraudulently obtained from Victim 5, by an interstate wire that traveled through New Jersey. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## Count 5

**(Investment Advisor Fraud)**

From in or around July 2017 through in or around March 2021, in the District of New Jersey, and elsewhere, defendant

**KENNETH A. WELSH**

knowingly and willfully used instrumentalities of interstate commerce and other means, directly and indirectly: (a) to employ a device, scheme, and artifice to defraud clients and prospective clients; (b) to engage in a transaction, practice, and course of business which operated as a fraud or deceit upon clients and prospective clients; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, namely, that WELSH, an investment adviser, fraudulently obtained money and property from Victim 1, Victim 2, Victim 3, Victim 4, and Victim 5 by falsely claiming that the funds were used or would be used for investments on behalf of the respective victims, but that were not actually used for investments and instead were diverted into accounts controlled by WELSH and spent on his personal expenditures.

In violation of Title 15, United States Code, Sections 80b-6 and 80b-17; and Title 18, United States Code, Section 2.

## **ATTACHMENT B**

I, Anna Szawara, am a Special Agent with the Federal Bureau of Investigation. I have conducted an investigation and discussed this matter with other law enforcement officers who have participated in this investigation and have knowledge of the following facts. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

### **Introduction**

1.  From in or around July 2017 through in or around March 2021, defendant KENNETH A. WELSH ("WELSH"), an investment advisor, fraudulently obtained at least approximately $2,865,134 from five clients of his brokerage firm. These funds were initially invested in brokerage accounts that defendant WELSH managed on behalf of his clients. Despite his obligation to manage his clients' accounts responsibly and without their authorization, WELSH diverted the funds from the clients' brokerage accounts through a series of Automated Clearing House ("ACH") transfers and cashier's checks. WELSH caused the fraudulently-obtained funds to be directed into accounts that were held in his family members' names, but over which he had control (the "Welsh Family Accounts"). WELSH then used the Victims' money to fund his extravagant personal expenses.

### **Background**

2.  At all times relevant to this Complaint:

    a. WELSH resided in the District of New Jersey, and was a registered broker employed by a brokerage firm ("Brokerage Firm 1") with a branch location in Fairfield, New Jersey.

    b. Victim 1 was a resident of Morganville, New Jersey.

    c. Victim 2 was a resident of Fairfield, New Jersey.

    d. Victim 3 and Victim 4 were married and were residents of North Caldwell, New Jersey.

    e. Victim 5 was a resident of Whitehouse Station, New Jersey.

4

    f. WELSH purported to provide investment advisor services to clients, including Victim 1, Victim 2, Victim 3, Victim 4, and Victim 5 (collectively, the "Victims").

### The Scheme to Defraud

3. WELSH used two methods to perpetrate his fraudulent scheme:

    a. First, WELSH initiated approximately 123 fraudulent ACH transfers that caused the transfer of approximately $2,596,394 from the Victims' accounts at Brokerage Firm 1 to the Welsh Family Accounts. WELSH then utilized the fraudulently obtained funds to gamble and to fund extravagant personal expenses, including luxury gifts and items.

    b. Second, WELSH fraudulently submitted authorizations to transfer funds that caused approximately (14) cashier's checks totaling approximately $268,740 to be drawn against the relevant victim's brokerage account. The cashier's checks were made out to a New Jersey-based business dealing in coins, gold, and other precious metals (the "Coin and Gold Business").

### Victim 1

4. Victim 1 established a brokerage account with Brokerage Firm 1 in or around 2012. WELSH served as Victim 1's investment advisor and managed Victim 1's brokerage account.

5. WELSH caused approximately five (5) ACH transactions, whereby approximately $47,414 was transferred from Victim 1's brokerage account to the Welsh Family Accounts. WELSH ultimately withdrew, redirected, or transferred the money from the Welsh Family Accounts for his own use.

6. In addition, WELSH submitted forms authorizing fund transfers that caused approximately eight (8) cashier's checks totaling approximately $143,539 to be drawn on Victim 1's brokerage account. The cashier's checks were made out to the Coin and Gold Business. Victim 1 never authorized WELSH to withdraw money or cause checks to be written against Victim 1's brokerage account. Victim 1 also did not authorize these transactions and did not recall signing the above-referenced authorization forms.

### Victim 2

7. Victim 2 established a brokerage account with Brokerage Firm 1 in or around 2001. WELSH began serving as Victim 2's investment advisor at some point after WELSH joined Brokerage Firm 1 in or around 2012 and managed Victim 2's brokerage account.

8.  From in or around January 2018 through in or around January 2021, WELSH caused approximately thirty-two (32) ACH transactions, whereby approximately $398,779 was transferred from Victim 2's brokerage account to the Welsh Family Accounts. WELSH ultimately withdrew, redirected, or transferred the money from the Welsh Family Accounts for his own use.

9.  In addition, WELSH submitted forms authorizing fund transfers that caused approximately four (4) cashier's checks totaling approximately $84,000 to be drawn on Victim 2's brokerage account. The cashier's checks were made out to the Coin and Gold Business. Victim 2 did not recall ever authorizing the purchase of gold or coins, did not authorize these transactions, and did not recall signing the above-referenced authorization forms.

### Victim 3 and Victim 4

10.  Victim 3 and Victim 4 opened a jointly-held brokerage account at Brokerage Firm 1 in or around 2014. WELSH served as their investment advisor and managed Victim 3 and Victim 4's joint brokerage account.

11.  From in or around July 2018 through in or around December 2018, WELSH caused approximately twelve (12) ACH transactions, whereby approximately $334,401 was transferred from Victim 3 and Victim 4's brokerage account to the Welsh Family Accounts. WELSH ultimately withdrew, redirected, or transferred the money from the Welsh Family Accounts for his own use.

### Victim 5

12.  Victim 5 initially established a brokerage account with WELSH when he was employed by a different brokerage firm, but followed WELSH to Brokerage Firm 1 in or around 2012. WELSH served as Victim 5's investment advisor and managed Victim 5's brokerage account.

13.  WELSH caused approximately seventy-four (74) ACH transactions, whereby approximately $1,815,800 was transferred from Victim 5's brokerage account to the Welsh Family Accounts. WELSH ultimately withdrew, redirected, or transferred the money from the Welsh Family Accounts for his own use.

14.  In addition, WELSH submitted forms authorizing fund transfers that caused approximately two (2) cashier's checks totaling approximately $41,201 to be drawn on Victim 5's brokerage account. Victim 5 did not authorize the purchase of gold or coins, did not authorize these transactions, and did not recall signing the above-referenced authorization forms.